LEE, P.J.,
 

 for the Court.
 

 PROCEDURAL HISTORY
 

 ¶ 1. Thomas and Jennifer Beddingfield were married in 1995. The parties separated sometime in 2006, and Thomas filed for a divorce in the Lauderdale County Chancery Court in November 2006. There were no children born to the parties during the marriage.
 

 ¶ 2. In October 2007, Thomas and Jennifer filed a consent to a divorce on the ground of irreconcilable differences, asking the chancellor to decide whether Jennifer was entitled to alimony and to divide the marital property. After a hearing on the matter, the chancellor divided the marital property and ordered Thomas to pay $800 per month in periodic alimony and the note on Jennifer’s mobile home. Thomas was also ordered to pay as lump-sum alimony the amount necessary to pay the delinquent balance on the monthly installment note on the mobile home. Thomas now appeals asserting that the chancellor erred in ordering him to pay alimony.
 

 FACTS
 

 ¶ 3. At the time of the trial, Thomas lived in a double-wide mobile home located on six acres of land in Meridian, Mississippi with his mother, Rebecca Beddingfield, who currently suffers from Huntington’s disease and requires special care. Thomas possesses an eleventh-grade education and no graduation equivalent diploma. Furthermore, he claimed that he was unemployed. However, Thomas did and continues to manage and collect rent from Rebecca’s mobile-home-park residents, a task which takes about one hour each month. Rebecca refrains from compensating Thomas directly for this task, but she does pay all of his monthly bills and living expenses. Thomas was employed by Quality Logistics, but he was laid off on September 1, 2006. Thomas also earned money by cutting grass and playing in a band.
 

 ¶ 4. Jennifer, at the time of trial, was living with friends and storing some property in a mobile home located in Neshoba County. The debt owed on this mobile home is in Thomas’s and Rebecca’s names. Jennifer, at the time of trial, was unemployed and unable to work because of a disability. During the marriage Jennifer held various jobs, but now she complains of multiple physical and mental ailments. Jennifer further claimed that during the marriage, she and Thomas continuously had money in their bank accounts and that this money came primarily from the rent paid by residents at Rebecca’s trailer park. Thomas and Jennifer had no children together, but Jennifer had a child from a previous marriage, James Embry, who now lives with Jennifer, although she is not his custodial parent. Jennifer receives neither child support for James nor does she pay child support for him. Jennifer has also filed for social security benefits, but she has not received approval. At trial, there existed conflicting testimony as to whether Thomas or Jennifer committed adultery during their marriage.
 

 STANDARD OF REVIEW
 

 ¶ 5. Our standard of review in chancery matters is well settled. This Court will not reverse a decision of a chancellor unless the chancellor’s findings were clearly erroneous, manifestly wrong, or ap
 
 *782
 
 plied an erroneous legal standard.
 
 Pearson v. Pearson,
 
 761 So.2d 157, 162(¶ 14) (Miss.2000).
 

 DISCUSSION
 

 ¶ 6. In his only issue on appeal, Thomas argues that the chancellor erred in awarding Jennifer periodic and lump-sum alimony because Thomas is unemployed and the evidence shows that he cannot pay for his own living expenses, much less those of another. He argues that the chancellor incorrectly speculated that he could earn enough money to pay the alimony and that his mother could care for herself without his constant support. He further asserts that Jennifer had the burden of showing that he could afford to pay alimony and that she failed to meet this burden. Finally, Thomas argues that the chancery court disregarded his right to lead a normal life with a decent standard of living by requiring him to pay alimony.
 

 ¶ 7. Thomas first contends that the division of the marital property was such that Jennifer did not need alimony. Thomas claims that Jennifer received most of the unencumbered property and did not contribute to the accumulation of any of the marital property. In making an equitable distribution of marital assets, chancellors are directed to consider the following factors as set forth in
 
 Ferguson v. Ferguson,
 
 639 So.2d 921, 928 (Miss.1994):
 

 1.Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
 

 a. Direct or indirect economic contribution to the acquisition of the property;
 

 b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
 

 c.Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
 

 2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
 

 3. The market value and the emotional value of the assets subject to distribution.
 

 4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
 

 5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
 

 6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
 

 7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
 

 8. Any other factor which in equity should be considered.
 

 The chancellor is not required to consider all eight factors but “may consider only those factors he finds ‘applicable’ to the property in question.”
 
 Owen v. Owen,
 
 798 So.2d 394, 399(1113) (Miss.2001) (quoting
 
 Carrow v. Carrow,
 
 741 So.2d 200, 202(¶ 10) (Miss.1999)). A chancellor’s division and distribution will be upheld if it is supported by substantial credible evidence.
 
 *783
 

 Carrow v. Carrow,
 
 642 So.2d 901, 904 (Miss.1994).
 

 ¶ 8. The chancellor noted the
 
 Ferguson
 
 factors and divided the property as follows: Thomas was awarded his 2005 double-wide mobile home; the 5.53 acres the mobile home sits upon; and certain personal property, including electronic equipment, his truck, a storage building, most of the couple’s furniture, and a washing machine and dryer. Jennifer was awarded her 1997 mobile home, including the one acre it sits upon, which she inherited from her father; various electronic equipment; some of the couple’s furniture; a trailer; a storage building; a stackable washer and dryer; and a tanning bed. Several items of Jennifer’s property were actually in the possession of her son. The chancellor noted that Thomas and Jennifer each had admitted to having given away some of the couple’s marital property. Thomas admitted that he sold most of his musical equipment and a trailer. The chancellor also noted that both parties owed more on their respective mobile homes than the mobile homes were worth and that Jennifer’s mobile home was in poor condition. There were values placed on some of the personal items, but many of them were old and had little value. There was not sufficient testimony, other than Thomas’s assertions, that Jennifer did not contribute to the marital assets. We find that the chancellor’s division of the marital assets was supported by substantial credible evidence.
 

 ¶ 9. After equitably dividing the marital assets, the chancellor determined that Jennifer should be awarded alimony. In
 
 Armstrong v. Armstrong,
 
 618 So.2d 1278, 1280 (Miss.1993), the supreme court outlined which factors a court should consider when making a general award of alimony. Those factors are as follows: (1) “[t]he income and expenses of the parties”; (2) “[t]he health and earning capacities of the parties”; (3) “[t]he needs of each party”; (4) “[t]he obligations and assets of each party”; (5) “[t]he length of the marriage”; (6) “[t]he presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care”; (7) “[t]he age of the parties”; (8) “[t]he standard of living of the parties, both during the marriage and at the time of the support determination”; (9) “[t]he tax consequences of the spousal support order”; (10) “[f]ault or misconduct”; (11) “[w]asteful dissipation of assets by either party”; or (12) “[a]ny other factor deemed by the court to be ‘just and equitable’ in connection with the setting of spousal support.”
 
 Id.
 
 “Whether to award alimony, and the amount to be awarded, are largely within the discretion of the chancellor.”
 
 Cherry v. Cherry,
 
 593 So.2d 13, 19 (Miss.1991).
 

 ¶ 10. Although the chancellor did not specifically state each
 
 Armstrong
 
 factor, he stated that he considered any evidence relating to the
 
 Armstrong
 
 factors and then listed the evidence accordingly. The chancellor noted that Thomas was in good health and was physically and mentally able to work. The chancellor stated that Thomas had voluntarily decided not to work to care for his ailing mother. Thomas no longer collects the rent checks from his mother’s mobile-home park. The chancellor noted that Thomas’s income and expenses are paid for by his mother. Thomas also testified that he rarely looks for a job. The chancellor listed all of Thomas’s obligations and assets, including personal property and real property. The chancellor found that the evidence did not establish the parties’ marital standard of living since they had filed for bankruptcy four years prior to the hearing.
 

 ¶ 11. The chancellor noted that Jennifer had several physical conditions that limited
 
 *784
 
 her ability to work. Jennifer receives Medicaid assistance and approximately $162 per month in food stamps, and she had applied for social security disability benefits. Jennifer stored her possessions in a mobile home, but she was living with a friend while she recovered from a previous surgery. The chancellor further noted that Thomas’s behavior was a factor in the parties’ decision to divorce. We find that there was substantial credible evidence to support the chancellor’s decision to award Jennifer $300 per month in periodic alimony and an additional award to pay the note on her mobile home, including any delinquent payments. This issue is without merit.
 

 ¶ 12. THE JUDGMENT OF THE LAUDERDALE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.